**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

SHERRI L.,[1]

Plaintiff,

vs.

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 1:23-cv-00556

Magistrate Judge Caroline H. Gentry
(by full consent of the parties)

## DECISION AND ORDER

Plaintiff filed an application for Supplemental Security Income (SSI) on April 26, 2021. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I. BACKGROUND

Plaintiff asserts that she has been under a disability since April 20, 2018.[2] She was fifty-two years old on the date that she filed her application. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 416.963(d). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-2 at PageID 34-53), Plaintiff's Statement of Errors ("SE," Doc. No. 9), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case began on April 26, 2021. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since April 26, 2021, the SSI application date.

Step 2: She has the severe impairments of disorders of the spine, chronic pain syndrome, myofascial pain syndrome, osteoarthritis of the right first metatarsophalangeal joint, chronic obstructive pulmonary disease, asthma, major depressive disorder, and generalized anxiety disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 CFR S 416.967(b), subject to the following limitations: "[S]he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold, extreme heat, excessive humidity, fumes, odors, dusts, gases, and poor ventilation. She must avoid all unprotected heights. [Plaintiff] is able to concentrate, persist, and maintain pace for simple and routine tasks on an ongoing basis. She is able to adapt to infrequent changes in routine and pressures."

She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 6-2, PageID 39-47.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 47-48.)

**B. The ALJ's Step Three Analysis**

At Step 3, the ALJ found that Plaintiff's mental impairments do not meet or medically equal the criteria of Listing 12.04.[3] (Decision, Doc. No. 6-2, PageID 40-42.) The ALJ analyzed each area of functioning described in paragraph B of Listing 12.04,

[3] The ALJ also found that Plaintiff's mental impairments do not meet or equal the criteria of Listing 12.06. (Decision, Doc. No. 6-2, PageID 40.) However, Plaintiff's only asserted error is that the ALJ erroneously concluded that Plaintiff's impairments did not meet the requirements of Listing 12.04. (*See generally* SE, Doc. No. 9.) This decision will therefore only address the ALJ's analysis of Listing 12.04.

and found only mild impairment in the areas of understanding, remembering, or applying information and interacting with others:

> In understanding, remembering or applying information, [Plaintiff] has a mild limitation. [Plaintiff] graduated high school and has performed semi-skilled work in the past (B13E/2). She has displayed normal memory, intellect, and thought process at psychiatric exams (B4F/24; B5F/22, 56; B10F/3-15; B11F/7). However, sometimes [Plaintiff] forgets what she is talking about (B7F/8). As such, the undersigned has provided for mild limitation in understanding, remembering, or applying information.
>
> In interacting with others, [Plaintiff] has a mild limitation. [Plaintiff] was pleasant and cooperative at the Field Office in May 2021 (B1E/2). She typically appeared polite and cooperative at psychiatric visits in 2021 and 2022 (B3F/141; B11F/7). On the other hand, some visits noted [Plaintiff's] anxious affect and nervous laughter (B3F/13; B4F/6-16; B7F/2-9). Thus, the undersigned has provided for mild limitation in social functioning.

(*Id.* at PageID 41.) The ALJ found moderate impairment in the areas of concentrating, persisting, or maintaining pace and adapting or managing oneself:

> With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation. [Plaintiff] reported that she can only pay attention for five minutes at a time (B2E/6). She also indicated she has difficulty following written or spoken instructions (Id.). She displayed scattered thoughts at a counseling sessions [sic] in September and October 2021 (B4F/13, 17; B7F/2, 6, 8). Alternately, [Plaintiff's] psychiatrist stated her attention span and concentration were age appropriate in November 2021, December 2021, and January 2022 (B11F/21, 36, 55). In addition, she is able to prepare simple meals and perform light housework (B2E/3). She shops by mail and manages her own finances (Id. at 4). Given these reports and observations, the undersigned finds moderate limitation in concentrating, persisting, or maintaining pace.
>
> As for adapting or managing oneself, [Plaintiff] has experienced a moderate limitation. [Plaintiff] reported she sometimes neglects her personal hygiene due to lack of motivation (B2E/2; B4F/13). However, psychiatric treatment notes from 2021 described [Plaintiff] was appropriately dressed with good hygiene and good grooming (B5F/8, 22). She displayed normal judgment (B4F/5, 6, 24; B5F/56; B7F/6, 8; B10F/3, 5). Moreover, she has consistently denied suicidal ideation and self-injurious behavior (Id. at 22,

> 37, 56). Therefore, the undersigned finds moderate limitation in adapting or managing oneself.

(*Id.*)

The ALJ further found that Plaintiff's impairments do not meet the criteria in paragraph C of Listing 12.04:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence of a serious and persistent mental disorder lasting at least two years with evidence of ongoing medical treatment and marginal adjustment. [Plaintiff] was hospitalized for visual disturbances and depression in August 2022 (B13F/5). However, her mental status exam findings were normal, and she was discharged home with her husband in stable condition (*Id. at* 4-5). She has reported anxious thoughts, but they are not overly limiting as she is able to drive and attend pain management appointments (B2E/4-5). This indicates [Plaintiff] retains some ability to function outside her home.

(Decision, Doc. No. 6-2, PageID 41-42.)

State agency psychological consultants reviewed the record at the initial and reconsideration levels and opined that Plaintiff had only mild to moderate impairment in the paragraph B areas of functioning. (AR, Doc. No. 6-3, PageID 192-93 & 201-02.) They therefore concluded that the evidence did not establish the paragraph B criteria. (*Id.*) They also concluded that the evidence did not establish the paragraph C criteria. (*Id.*) According to the consultants, Plaintiff was capable of concentrating, persisting, and keeping pace for "simple, [two- to three-] step tasks ongoing," and could "adapt to infrequent changes in routine and pressures." (*Id.* at PageID 195-96 & 204-05.)

The ALJ concluded that the consultants' paragraph B findings were persuasive. (Decision, Doc. No. 6-2, PageID 46.) The ALJ reasoned that their conclusions were

"consistent with records provided by [Plaintiff's] counselors at Greater Cincinnati Behavioral Health Services and her psychiatrist and UC Health (*See* B3F; B4F; B10F; B11F)." (*Id.*) The ALJ found that the consultants' functional limitations were "mostly persuasive." (*Id.*) According to the ALJ, the limitations "comport with exam findings in the psychiatric treatment records." (*Id.*) By way of example, the ALJ explained that "[Plaintiff's] counselors and psychiatrist occasionally noted her anxious or dysthymic moods, but she was consistently described as agreeable, pleasant, and polite (B3F/141; B4F/5-17; B10F/11-15)." (*Id.* (citing AR, Doc. No. 6-7, PageID 843 & 874-86; AR, Doc. No. 6-8, PageID 1236-41).) The ALJ also cited mental health treatment records that showed "[Plaintiff's] intellect was within normal limits and her attention was age appropriate (B4F/24; B5F/22, 56; B10F/3-15; B11F/7, 21, 36, 55)." (*Id.* (citing AR, Doc. No. 6-7, PageID 893, 921 & 955; AR, Doc. No. 6-8, PageID 1228-40, 1248, 1262, 1277 & 1296).) The ALJ did not adopt the consultants' proposed limitations verbatim, however, and instead "modified the number of steps as it is not in vocational terms and replaced it with the term 'routine.'" (*Id.*)

## IV. LAW AND ANALYSIS

In her sole assignment of error, Plaintiff alleges that the ALJ "erred in finding at Step 3 of the sequential evaluation process that [Plaintiff's] mental impairments did not meet or equal the criteria of Listing 12.04 (depressive, bipolar, and related disorders)." (SE, Doc. No. 9, PageID 1743.) For the reasons discussed below, Plaintiff's assertion is not well-taken and the Commissioner's decision shall therefore be affirmed.

**A. Applicable Law**

A claimant will be found "disabled" at Step Three of the sequential evaluation if her impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments "describes for each of the major body systems impairments that [SSA considers] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 416.925(c)(3); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citation omitted). A claimant must satisfy all the criteria to "meet" the listing. *Id.* Alternatively, a claimant may "equal" the listing by showing that the impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 416.920(a)(4)(iii), 416.926(a); *Reynolds*, 424 F. App'x at 414 (citation omitted).

Because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary," the standard in Step Three is a demanding one. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Further, Plaintiff "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).

Listing 12.04 addresses depressive, bipolar, and related disorders. 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; Pt. 404, Subpt. P, App. 1 § 12.04. This listing requires Plaintiff to show that she meets or equals the criteria in both paragraph A and either paragraph B or paragraph C:

A. Medical documentation of the requirements of paragraph 1 or 2:

1. Depressive disorder, characterized by five or more of the following:
    a. Depressed mood;
    b. Diminished interest in almost all activities;
    c. Appetite disturbance with change in weight;
    d. Sleep disturbance;
    e. Observable psychomotor agitation or retardation;
    f. Decreased energy;
    g. Feelings of guilt or worthlessness;
    h. Difficulty concentrating or thinking; or
    i. Thoughts of death or suicide.

2. Bipolar disorder, characterized by three or more of the following:
    a. Pressured speech;
    b. Flight of ideas;
    c. Inflated self-esteem;
    d. Decreased need for sleep;
    e. Distractibility;
    f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
    g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04.

**B. Substantial Evidence Supports The ALJ's Conclusion That Plaintiff's Mental Impairments Do Not Meet The Requirements Of Listing 12.04.**

Plaintiff contends that the ALJ "erroneously found that [she] did not satisfy either the paragraph B or paragraph C criteria" of Listing 12.04. (SE, Doc. No. 9, PageID 1744.) Plaintiff argues that she suffers marked limitations in all four paragraph B areas of functioning. (SE, Doc. No. 9, PageID 1744.) However, Plaintiff does not cite any specific evidence or findings to support this assertion. *See Smith-Johnson,* 579 F. App'x at 432. Instead, she cites generally to progress notes from her therapist and psychiatrist, as well as her own testimony about "the problems she has with understanding and remembering information, staying on pace, and managing herself." (SE, Doc. No. 9, PageID 1744-75.)

The Court concludes that Plaintiff's assertion is not well-taken. Substantial evidence in the record supports the ALJ's conclusions that Plaintiff does not suffer

marked restriction in two of the paragraph B areas of functioning, and her mental disorder is not "serious and persistent" as defined in paragraph C.

The ALJ found that Plaintiff's mental impairments caused only mild to moderate impairment in the paragraph B areas of functioning. (Decision, Doc. No. 6-2, PageID 41.) The ALJ acknowledged Plaintiff's complaints that she could only pay attention for five minutes at a time and had difficulty following written and spoken instructions. (*Id.* (citing AR, Doc. No. 6-6, PageID 320).) The ALJ also acknowledged observations by mental health providers that Plaintiff sometimes exhibited an anxious affect, nervous laughter, and scattered thoughts, and sometimes "[forgot] what she [was] talking about." (*Id.* (citing AR, Doc. No. 6-7, PageID 715 & 875-86; AR, Doc. No. 6-8, PageID 972-79).) The ALJ balanced this evidence with normal findings that included normal memory, age-appropriate attention span and concentration, normal intellect, normal thought processes, polite and cooperative behavior, normal judgment, no complaints of suicidal ideation, and no self-injurious behavior. (*Id.* (citing AR, Doc. No. 6-6, PageID 313; AR, Doc. No. 6-7, PageID 843; AR, Doc. No. 6-8, PageID 1248, 1262, 1277 & 1296).) The ALJ considered Plaintiff's statements that she sometimes neglected her personal hygiene due to lack of motivation (AR, Doc. No. 6-6, PageID 316; AR, Doc. No. 6-7, PageID 882), but also considered treatment notes that described Plaintiff as "appropriately dressed with good hygiene and good grooming." (*Id.* (citing AR, Doc. No. 6-8, PageID 907, 921).) Finally, the ALJ considered the activities Plaintiff reported engaging in—including preparing simple meals, performing light housework, shopping by mail, and managing her finances—to support his findings. (*Id.* (citing AR, Doc. No. 6-6, PageID 317-18).)

With regard to the paragraph C criteria, the ALJ concluded that the record did not contain "evidence of a serious and persistent mental disorder lasting at least two years with evidence of ongoing medical treatment and marginal adjustment." (Decision, Doc. No. 6-2, PageID 41.) The ALJ acknowledged that Plaintiff was seen in an emergency department for complaints of visual disturbances and depression in August 2022.[4] (*Id.* (citing AR, Doc. No. 6-11, PageID 1718-21).) But the ALJ also noted that the mental status examination was normal, and that the attending physician discharged Plaintiff to her home, in stable condition, with her husband. (*Id.*) The ALJ reasoned that although Plaintiff reported having anxious thoughts, they were "not overly limiting as she is able to drive and attend pain management appointments (B2E/4-5)." (*Id.* (citing AR, Doc. No. 6-6, PageID 318-19).) According to the ALJ, this evidence showed that Plaintiff retained "some ability to function outside her home." (*Id.*)

These conclusions are supported by substantial evidence in the mental health treatment records. Plaintiff began treatment with psychiatrist John D'Imperio, M.D. in June 2020. (AR, Doc. No. 6-7, PageID 747.) Dr. D'Imperio diagnosed a moderate episode of recurrent major depressive disorder and prescribed Wellbutrin, which he discontinued the following month and replaced with Pristiq. (*Id*. at PageID 747, 781-82 & 791-92.) In August 2020, Plaintiff reported feeling "a little better" after starting Pristiq, and said her primary symptom was low motivation. (*Id*. at PageID 792.) During a visit in

---

[4] The ALJ stated that Plaintiff was "hospitalized" in August 2022. (Decision, Doc. No. 6-2, PageID 41.) However, the emergency department records indicate that Plaintiff was treated in the emergency room and then discharged without being admitted to the hospital. (AR, Doc. No. 6-11, PageID 1718-21.)

November 2020, Plaintiff reported that her mood was "good, doing better today." (*Id*. at PageID 793.) Dr. D'Imperio observed that Plaintiff had a cooperative and engaged attitude, intact executive function, minimized symptoms, good concentration, fully intact memory, and very good insight. (*Id*.)

In January 2021, a few months prior to the SSI application date, Plaintiff told Dr. D'Imperio that she continued to feel tired almost every day and that her symptoms continued to wax and wane. (*Id.* at PageID 808.) But she also reported that her symptoms were "better overall" with some improvement in severity and frequency. (*Id.*) Dr. D'Imperio noted that Plaintiff exhibited a tired and frustrated affect and had dark circles under her eyes. (*Id*.) However, he otherwise documented normal mental status findings that included cooperative and engaged behavior, intact executive functioning, good concentration, intact memory, fair judgment, and good insight. (*Id.* at PageID 808-09.)

Plaintiff complained in February 2021 that her symptoms of fatigue had gradually worsened and she had fallen several times due to fatigue. (AR, Doc. No. 6-7, PageID 826.) However, during her next visit in May 2021, Plaintiff attributed these symptoms to "pain medication and muscle relaxer use." (*Id.* at PageID 842.) She said her depression and anxiety symptoms had not improved significantly and continued to wax and wane, but were overall stable. (*Id.*) According to Dr. D'Imperio, Plaintiff's "[c]urrent symptom severity has been described as mild to moderate depending on situational stressors and physical health issues." (*Id.*) In September 2021, Plaintiff told Dr. D'Imperio that her symptoms had gradually worsened, although Dr. D'Imperio again noted that her current symptom severity was only mild to moderate. (*Id.* at PageID 855.)

Plaintiff stated in October 2021 that her symptoms had "improved in some ways and worsened in others" based on situational stressors. (AR, Doc. No. 6-8, PageID 906.) In November 2021, Dr. D'Imperio reported that "[c]urrent symptom severity has been described as mostly mild to moderate to severe" depending on situational stressors, but also noted that Plaintiff had made "[o]verall some partial progress" in the treatment of her symptoms. (*Id.*) Dr. D'Imperio noted in December 2021 that Plaintiff's symptoms were "mostly [m]oderate." (*Id.* at PageID 936.) Nevertheless, he added another trial of Wellbutrin to Plaintiff's medication regimen. (*Id.* at PageID 937.) At the next visit in January 2022, Plaintiff reported some improvement in her energy and mood after starting Wellbutrin. (*Id.* at PageID 954).

On some occasions, Dr. D'Imperio's progress notes document a depressed and anxious mood, impaired judgment, and an anxious, tired, or blunted affect. (AR, Doc. No. 6-7, PageID 827; AR, Doc. No. 6-8, PageID 907, 936 & 955.) However, on several occasions Dr. D'Imperio documented normal findings that included intact insight and judgment, a full-ranged affect, polite and cooperative behavior, well-organized and goal-directed thought processes, age-appropriate attention span and concentration, no hallucinations or delusions, and intact recent, remote, and immediate memory. (AR, Doc. No. 6-7, PageID 843, 855 & 857; AR, Doc. No. 6-8, PageID 907, 921, 936 & 955.)

Plaintiff sought treatment from a behavioral health therapist in May 2021. (AR, Doc. No. 6-7, PageID 889.) She reported symptoms of anxiety, difficulty with focus and concentration, hopelessness, lack of motivation, and paranoia that other people were "saying things about her." (*Id.* at PageID 889.) Subsequent therapy records documented

some abnormal mental status findings including a dysthymic and/or anxious mood and affect, fast and over-productive speech, scattered or circumstantial thoughts, anxious but pleasant behavior, and decreased insight. (AR, Doc. No. 6-7, PageID 874, 875, 876, 878, 879, 880, 881, 882, 884, 885 & 886; AR, Doc. No. 6-8, PageID 974, 976 & 978.) However, these records also documented many normal findings including a euthymic mood and affect, calm and appropriate behavior, logical thought processes, normal cognition and memory, and normal insight and judgment. (AR, Doc. No. 6-7, PageID 874, 875, 876, 877, 878, 879, 880, 881, 882, 883, 884, 885, 886 & 893; AR, Doc. No. 6-8, PageID 974, 976 & 978.) Plaintiff was discharged from therapy in January 2022 after she missed several appointments. (AR, Doc. No. 6-8, PageID 980.)

The most recent records show that on August 9, 2022, Plaintiff was treated in an emergency department for reports of hallucinatory behavior. (AR, Doc. No. 6-11 at PageID 1718-21.) But as discussed above, her mental status examination was normal and findings included a pleasant mood, cooperative behavior, a calm affect, full orientation, normal insight and judgment, normal memory, and no hallucinations, delusions, or suicidal or homicidal thoughts. (*Id.* at PageID 1720.) The attending physician listed differential diagnoses of drug withdrawal, an acute psychotic break, and depression. (*Id.* at PageID 1720.) She discharged Plaintiff in stable condition, without admitting her to the hospital for further treatment. (*Id.* at PageID 1720-21.)

The ALJ reasoned in the RFC assessment section of the decision that the medical records contain no other documentation that Plaintiff experienced visual hallucinations, and concluded that this episode "appears to be a unique occurrence not found elsewhere

in the record." (Decision, Doc. No. 6-2 at PageID 44.) The ALJ concluded: "[T]his rare symptom would not preclude [Plaintiff] from performing a reduced range of light work on a sustained basis." (*Id.*) The ALJ's conclusion is supported by the mental health records, which do not document any significant complaints of hallucinatory symptoms. Plaintiff also did not mention any such symptoms in her disability reports. (AR, Doc. No. 6-6, PageID 315-29, 339-43, 372-86 & 393-400.) Plaintiff also did not mention the emergency department visit or any hallucinatory symptoms at the hearing that occurred just a few weeks later on August 18, 2022. (*See* AR, Doc. No. 6-2, PageID 56-68.)

The ALJ's conclusions are further supported by the fact that the record contains no medical opinion that Plaintiff's impairments meet or equal the requirements of any listed impairment. As noted above, state agency psychological consultants reviewed the record and opined that the evidence did not establish the paragraph B or paragraph C criteria. (AR, Doc. No. 6-3, PageID 192-93 & 201-02.) The consultants concluded that Plaintiff was capable of concentrating, persisting, and keeping pace for "simple, [two- to three-] step tasks ongoing," and could "adapt to infrequent changes in routine and pressures." (*Id.* at PageID 195-96 & 204-05.) The ALJ complied with applicable regulations when evaluating these opinions. (*Id.*) Notably, Plaintiff does not argue that the ALJ failed to comply with applicable regulations when analyzing medical opinion evidence. (*See generally* SE, Doc. No. 9.) Nor does Plaintiff offer statements from any of her treating sources to rebut the consultants' opinions or the ALJ's conclusions. (*Id.*)

## V. CONCLUSION

Taken together, the evidence cited by the ALJ constitutes substantial evidence—that is, "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Biestek*, 139 S. Ct. at 1154)—that supports the ALJ's finding that Plaintiff's impairments do not meet or equal Listing 12.04. Because the ALJ's finding is supported by substantial evidence, it cannot be disturbed by this Court even if substantial evidence in the record would support the opposite conclusion. *Key*, 109 F.3d at 273. Therefore, the Commissioner's decision shall be affirmed.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) is OVERRULED;
2. The Court AFFIRMS the Commissioner's non-disability determination; and
3. The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge